Ernest Smith v. Commissioner.
Smith v. Commissioner
Docket No. 7097.
United States Tax Court
1946 Tax Ct. Memo LEXIS 297; 5 T.C.M. (CCH) 7; T.C.M. (RIA) 46009; January 8, 1946
James R. Adams, C.P.A., 110 East 42nd St., New York 17, N. Y., for the petitioner. William A. Schmitt, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies of $109.49 and $457.24 in income tax for the calendar years 1940 and 1941. The issues presented for decisions are (a) whether the petitioner is entitled to credit for seven dependents - his mother, father, and four half brothers and a half sister, and (b) whether he is entitled to deduct certain amounts as expenses. Findings of Fact The petitioner, a citizen of the United States, was retired and living in New York City during the taxable *298 years. He was not married. His returns, made on a cash basis, were filed with the collector of internal revenue for the second district of New York. The petitioner's father, mother, brother Norman, half sister and four half brothers lived in England during 1940 and 1941. His father and mother had been separated for some time. The father was about 67 in 1940 and the mother was one year younger. The father lived with a woman to whom he was not married. She was the mother of his five children mentioned above as a half sister and four half brothers of the petitioner. They ranged in age in 1940 from about 4 to 13. The petitioner and his brother, Norman, agreed in 1937 that Norman would furnish funds for the support of their mother, their father, and the latter's five children, and the petitioner would later reimburse Norman for two-thirds of the total. Norman expended or had money advanced to or for the use of the seven persons during 1940 and 1941. Norman sent the petitioner a statement in 1944 showing the total amounts expended in 1940 and 1941 and showing that the petitioner still owed his full two-thirds share thereof. The petitioner paid no money to Norman during 1940 or 1941 under *299 their agreement. The petitioner last saw his father in 1937 at which time the father had no money and "was a wreck, and throughly unemployable." Norman's wife and daughter came to the United States in August 1940 to avoid the effects of the war. The petitioner, at the request of Norman, paid money for their expenses. He expended $728.70 in 1940 and $1,845.08 in 1941. These amounts were less than two-thirds of the amounts expended in England in each year for the benefit of the seven persons described above. The petitioner paid $69.56 in 1940 for lunches at a club where he entertained persons with whom he discussed various developments in which he was interested. He made similar payments in 1941. He paid an attorney $125.00, at some time not disclosed by the record, for clearing title to some stock. He paid an accountant $300 in 1941 for preparing and reviewing various income tax returns and settling a tax controversy as to 1935 income. Opinion MURDOCK, Judge: Section 25(b)(2) allows a credit for dependents against net income for the purpose of the normal and the surtax. The credit amounts to $400 for each person "dependent upon receiving his chief support from the taxpayer *300 if such dependent person is under eighteen years of age or is incapable of self-support because mentally or physically defective." The Commissioner, in his regulations, (see Regulations 103, section 19.25-6) has said that the dependent need not be related to the taxpayer and need not be living with the taxpayer, but must be dependent upon and must be receiving his chief support from the taxpayer, and must be either under eighteen or incapable of self-support because defective. There is no evidence to show that the petitioner's mother was incapable of self-support because mentally or physically defective, that she was dependent upon the petitioner, or that she received her chief support from him. The evidence on these points relating to the petitioner's father is likewise insufficient. There is no evidence of the physical or financial condition of the petitioner's father during the taxable years. The petitioner was asked the question whether his father was physically incapacitated. His answer was: "My father, I saw him in 1937, he had no means at all. When I saw him in 1937, I had not seen him for about 13 or 14 or 15 years, and my father was a wreck, and thoroughly unemployable. *301 " The petitioner's father was apparently living in adultery with the mother of his five illegitimate children during the taxable years. One of those children at the beginning of 1940 was only about four years old. We are unable to find from the record as a whole that the father was incapable of self-support because mentally or physically defective. The evidence fails to show that the five illegitimate children of the petitioner's father were dependent upon the petitioner or why they would be. The mother of those children lived with the petitioner's father, but the record gives no indication of her ability or inability to support her children. Furthermore, the record does not show that these five children received their chief support from the petitioner. The record does not show whether or not these five children received any of their support from sources other than the petitioner and his brother. Perhaps some of these defects in the proof might have been overcome to the petitioner's advantage, but his counsel was warned during the trial to present his case fully and the petitioner must suffer the consequence of any failure of proof. If the above difficulties were overcome, we would *302 still have the troublesome question of the extent, if any, to which the petitioner furnished the support of any of these people during the taxable years. None of the funds came directly from him and the record does not show when, if ever, he had a settlement with his brother. The petitioner was retired during these years and was not engaged in any business. The amount which he paid a lunch club in 1940 and the undisclosed amount which he paid to the same club in 1941 are not shown to be deductible under any of the provisions of the Internal Revenue Code. The same is true of the amount which he paid accountants in 1941. Cf. , affirmed , (Oct. 15, 1945); , affirmed . The amount which he paid to attorney at some time not disclosed by the record appears to have been an additional cost of the stock rather than a deductible item. Decision will be entered for the respondent.